Joel L. Herz, Esq. - State Bar Number 015105
Law Offices of Joel L. Herz
3573 East Sunrise Drive, Suite 215
Tucson, AZ 85718
(520) 529-8080 (telephone)
(520)529-8077 (fascimile)
joel@joelherz.com (email)
Attorney for Plaintiff Greg Smith

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Smith,<br><br>                    Plaintiff,<br>          vs.<br><br>Reliance Standard Life Insurance Company, John Does 1-10; Jane Does 1-10; ABC Companies 1-10; XYZ Corporations 1-10,<br><br>                    Defendants. | Case No.: _____<br><br>**COMPLAINT** |

## **COMPLAINT**

Gregory Smith ("Plaintiff" or "Mr. Smith"), by and through his undersigned attorney, Joel L. Herz of the Law Offices of Joel L. Herz, for his causes of action against Reliance Standard Life Insurance Company, John Does 1-10, Jane Does 1-10, ABC Companies 1-10 and XYZ Corporations 1-10 (hereinafter collectively "Defendants"), alleges, upon knowledge as to himself, and upon information and belief as to all other matters, as follows:

## STATEMENT OF CASE AND JURISDICTION

Plaintiff, Gregory Smith, an individual residing in Pima County, Arizona, brings this action against Reliance Standard Life Insurance Company, a corporation, John Does 1-10, Jane Does 1-10, ABC Companies 1-10 and XYZ Corporations 1-10, individuals, companies or corporations who employed, insured, or provided benefits to Plaintiff, the identities of which are not yet known to Plaintiff, under: (1) the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1104 (Breach of fiduciary duty); §§ 1132 (Civil enforcement); §§ 1140 (Interference with protected rights) including but not limited to 29 U.S.C. §1132(1)(B) to recover benefits due, to enforce rights under the ERISA Plans, and to clarify rights for future benefits.

1. Jurisdiction over the federal claims are invoked, inter alia, pursuant to 29 U.S.C. 1132(e)(1) (the statute dealing with jurisdiction under ERISA), 28 U.S.C. § 1331 (the statute providing for federal question jurisdiction) and pendant jurisdiction. Jurisdiction is also appropriate pursuant to 28 U.S.C. §1332 (diversity jurisdiction) in that the Plaintiffs and all defendants reside in different states and the amount in controversy exceeds $75,000.  Jurisdiction over the claims is appropriate because Plaintiff resides in Tucson, Pima County, Arizona, and Defendants employed or insured or provided benefits to Plaintiff while he was a resident of Pima County, Arizona.

## VENUE

2. This action properly lies in the District of Arizona, inter alia, pursuant to 28 U.S.C. § 1391(b), because the claim arose in this judicial district.

2

## **GREGORY SMITH AND HIS DISABILITY**

3.      Mr. Smith has a rare (and very often deadly) form of brain cancer called esthesioneuroblastoma (ENB).

4.      Mr. Smith was diagnosed with brain cancer on March 12, 2014.

5.      At no time prior to March 12, 2014 did Mr. Smith have any knowledge that he had brain cancer and no doctor, prior to March 1, 2014 told him that he had brain cancer or gave him any inkling that he had brain cancer.

6.      On April 2, 2014, Mr. Smith had a massive brain tumor removed from his head in an operation which lasted more than nine hours.

7.      Mr. Smith has undergone significant treatment including chemotherapy and radiation therapy for brain cancer, which spread to other parts of his body.

8.      Mr. Smith is 62 years-old.

9.      Before he was diagnosed with brain cancer, Mr. Smith was employed with Focus HR, Inc. ("Focus HR") as a salesman.

10.     Mr. Smith ceased working due to brain cancer.

11.     Mr. Smith was insured under a short and long term disability policy with Reliance Standard.

12.     On June 19, 2014 Mr. Smith applied for short term disability benefits with Reliance Standard.

13.     The insurance had an effective date of March 1, 2014.

14.     Mr. Smith was not told that he might have brain cancer until March 5, 2014, when he was seen by Keith Soderberg, MD with Tucson ENT Associates, P.C.

3

15.     After a detailed ENT exam of the nasal cavity, Mr. Smith was told that the findings were suspicious for a neoplasm, possible esthesioneuroblastoma.  Mr. Smith was thereafter referred for a CT Scan and MRI.  This was 11 days after the effective date of the policy (March 1, 2014).

16.     On September 3, 2014, Reliance Standard denied Mr. Smith's application for short term disability benefits for the reason that he received medical treatment (including consultation, care or services), took any prescribed medications, or had any diagnostic procedures for the condition which he claimed rendered him disabled, during the three (3) months prior to March 1, 2014.  In Mr. Smith's situation, the 3 month look-back period was from December 1, 2013 to March 1, 2014.

17.     On October 7, 2014, Mr. Smith appealed Reliance Standard's decision to deny Mr. Smith's short term disability benefits.  In the appeal he made clear that he was neither treated nor diagnosed for brain cancer by any prior doctor.

18.     Indeed, with his appeal, he submitted a letter from an otolaryngologist, John Ruboyianes, M.D.  Dr. Ruboyianes clearly stated that there was no evidence of any neoplasm at Mr. Smith's visit on January 9, 2014, as follows:

> Mr. Smith was evaluated for chronic sinusitis in my office on January 9, 2014.  The nasal findings of an enlarged, reddened middle turbinate and obstruction of the ostiomeatal complex were consistent with my diagnosis of chronic rhinosinusitis.  **There was no evidence of any neoplasm at that time.**

*See* letter dated September 19, 2014 and Dr. Ruboyianes' January 9, 2014 medical record attached hereto as Exhibit A.

4

**COMPLAINT**

19.     On November 13, 2014, Reliance Standard denied Mr. Smith's appeal, basing its decision on a "pre-existing condition" exclusion of the policy, as follows:

**PRE-EXISTING CONDITIONS:**  An Insured will be considered to have a Pre-existing Condition and will be subject to the Pre-existing Conditions Limitation if:

(1)   the disability begins in the first (12) months after the Insured's effective date; **and**
(2) **he/she has received medical Treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines for the Sickness or Injury**, whether specifically diagnosed or not, causing such disability, **during the three (3) months immediately prior to the Insured's effective date of insurance**.

(emphasis added).

20.     In denying Mr. Smith's appeal, Reliance Standard determined that "Mr. Smith's impairment at the date of loss was 'caused by, contributed to by, or resulting from' a Pre-Existing Condition as defined by the group Policy. The records substantiate that Mr. Smith received treatment for the impairing condition of an ENB during the Pre-existing Condition period of December 1, 2013-March 1, 2014."

21.     Mr. Smith's "impairment at the date of loss" was brain cancer.

22.     The group Policy defines "treatment" as follows:  "'Treatment'" means care consistent with the diagnosis of the Insured's Injury or Sickness that has its purpose of maximizing the Insured's medical improvement. It must be provided by a Physician whose specialty or experience is most appropriate for the Injury or Sickness and conforms with generally accepted medical standards to effectively manage and treat the Insured's Injury or Sickness."

5

**COMPLAINT**

23.     Mr. Smith received no medical treatment consistent with the diagnosis of brain cancer during the three month look back period of December 1, 2013 and March 1, 2014.

24.     The medical treatment for brain cancer is to identify the tumor, remove the tumor surgically (if possible) and following radiation treatment and chemotherapy.

25.     Mr. Smith was not told that he might have brain cancer until March 5, 2014, when he was seen by Keith Soderberg, MD with Tucson ENT Associates, P.C. and after a detailed ENT exam of the nasal cavity, the findings were suspicious for a neoplasm, possible esthesioneuroblastoma.

26.     Mr. Smith was treated for chronic sinusitus, not symptoms associated with brain cancer, between the December 1, 2013 and March 1, 2014 look back period.

27.     Despite the undisputed medical history, Reliance Standard has denied Mr. Smith's benefits.

28.     Reliance Standard based this denial on a peer physician, Alan Lipkin, M.D.'s, medical record review of Mr. Smith's file.

29.     Dr. Lipkin never saw, interviewed, or examined Mr. Smith.

30.     Dr. Lipkin never spoke to Alexander Chiu, M.D., who certified to Reliance Standard that Mr. Smith is disabled due to brain cancer.

31.     Dr. Lipkin determined, only by reviewing the medical records, that "it was highly likely that the tumor had caused Mr. Smith's symptoms, even though Mr. Smith was not aware of the presence of the tumor when he was treated by Dr. Tooley on December 18, 2014 and Dr. Ruboyianes on January 9, 2014."

6

32.     Dr. Lipkin's statement, which Reliance Standard relies upon, is not relevant. The inquiry under the policy in question is not whether Mr. Smith had a brain tumor prior to March 1, 2014; the only inquiry is whether Mr. Smith received treatment for brain cancer during that period, because brain cancer is his disabling sickness.

33.     Reliance Standard has pointed to **no medical record showing that Mr. Smith received medical treatment for brain cancer between December 1, 2013 and March 1, 2014.**

34.     **Reliance Standard has pointed to no medical record showing that Mr. Smith received consultation, care or services, including diagnostic procedures for brain cancer between** December 1, 2013 and March 1, 2014.

35.     Mr. Smith's otolaryngologist, John Ruboyianes, M.D., **did examine** Mr. Smith on January 9, 2014, during the look back period time-frame, and **did not** see a tumor.

36.     Reliance Standard never spoke to John Ruboyianes, M.D.

## BENEFITS DUE TO MR. SMITH

37.     As an employee of Focus HR, Mr. Smith was entitled to participate in, and Mr. Smith was entitled to benefit from, the Reliance Standard Short-Term Disability Plan, Long-Term Disability Plan, and such other Plans which have not been properly named or identified (collectively, the "Plans").

38.     Under ERISA, ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) defines "fiduciary" as "a person is a fiduciary with respect to a plan to the extent (i) he . . . exercises any authority or control respecting management or disposition of its assets . . . "

**COMPLAINT**

39.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), "Fiduciary duties", reads in pertinent part:

> (a) Prudent man standard of care
>
>     1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and;
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>                                . . . .
> (D) in accordance with the documents and instruments governing the plan  insofar as such documents and instruments are consistent with the provisions of  this subchapter or subchapter III of this chapter.

40.     Reliance Standard cannot act out of self interest in deciding what to deny. Clearly, it is in the interest of Reliance Standard to deny claims because this saves the company money.   But to comply with ERISA law, Reliance Standard must act in a fiduciary capacity for Mr. Smith's interest.   In this case, his interest is in getting the disability income he is due.   This is obviously very important to Mr. Smith.   It was precisely to protect his financial health that Mr. Smith sought the protection of a disability policy.

41.     If Reliance Standard gave Mr. Smith's interests proper consideration, it would have approved his claim.   No good excuse exists for Reliance Standard not to

8

approve this claim.  Mr. Smith's otolaryngologist, John Ruboyianes, M.D., confirmed that he did not have a pre-existing condition.  Reliance Standard had no evidence to the contrary, other than the opinion of a peer review physician hired by Reliance Standard, who based his opinion on a records review, and never examined Mr. Smith or interviewed Mr. Smith or his physicians.  Indeed, his opinion ignores that specific policy language.

## FIRST CAUSE OF ACTION

### (Violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101 et seq.)

42.    Plaintiff realleges the above paragraphs as if fully set forth herein.

43.     Reliance Standard has an obligation to Mr. Smith to provide benefits to Mr. Smith under the terms of the ERISA Plans, including but not limited to short term and long term disability benefits.

44.    Reliance Standard has failed and refused to provide benefits to Mr. Smith under the terms of the Plans, including but not limited to short term and long disability benefits.

45.    Mr. Smith is entitled to recover benefits due to him under the terms of the Plans, to enforce his rights under the terms of the Plans, and to clarify his rights to future benefits under the terms of the Plans.

46.    Reliance Standard should be enjoined from denying benefits owed to Mr. Smith under the Plans, including but not limited to, the refusal and denial to provide long term and short disability benefits and to make payment to Mr. Smith for all such benefits, plus reasonable prejudgment interest on such amounts.

9

47.     ERISA provides that all Plan Administrators have "fiduciary duties" such that they must discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.

48.     Mr. Smith has exhausted the required administrative remedies.

49.     Pursuant to Section 113 (g) of ERISA, Mr. Smith is entitled to reasonable attorney's fee and costs of action.

50.     Mr. Smith is also entitled to a waiver of premiums per the terms of the policy "while he/she is receiving Monthly Benefits from us."

**COUNT TWO**

**(Declaratory Judgment)**

51.     Plaintiff realleges the above paragraphs as if fully set forth herein.

52.     Mr. Smith brings this declaratory judgment cause of action of his rights under the Group Weekly Income Insurance Non-Participating Contributory policy and Group Long Term Disability Insurance Non-Participating policy ("Group Policy") issued to Mr. Smith by Reliance Standard with respect to his short term and long term disability claim.

53.     Mr. Smith was covered by the Group Policy issued by Reliance Standard for the period when the disability occurred.

54.     Mr. Smith was covered by the Group Policy issued by Reliance Standard, which provided for short term and long term disability benefits to be paid upon a Total Disability.

**COMPLAINT**

55.     Reliance Standard has refused to pay short term and long term disability benefits, even though Mr. Smith has a Total Disability.

56.     Disability benefit payments are required to be made by Reliance Standard, as long as he is Totally Disabled.

WHEREFORE, Mr. Smith prays the Court issue an Order and declare that Reliance Standard is required to pay disability benefits to Mr. Smith in conformance with the Disability Income Policy.

## PRAYER FOR JUDGMENT AND REQUESTED DAMAGES

WHEREFORE, Plaintiff prays for judgment against Reliance Standard:

A.      For an amount which will make the Plaintiff whole, including but not limited to, retroactive benefits and other benefits under the Plans, and should accrue – but for the wrongful denial of disability benefits by Reliance Standard plus pre and post judgment interest in an amount to be proven at trial.

B.      For attorneys' fees and costs in obtaining Judgment against Defendants.

C.      For such further relief as the court deems just under the circumstances.


Dated: January 19, 2015                          /s/ Joel L. Herz
       Tucson, Arizona                               Joel L. Herz
                                                   LAW OFFICES OF JOEL L. HERZ
                                                   La Paloma Corporate Center
                                                   3573 East Sunrise Drive, Suite 215
                                                   Tucson, Arizona  85718

**COMPLAINT**